**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**NADER POURHASSAN,**<br><br>**Defendant.** | **CASE NO: PX-22-440** |

**GOVERNMENT'S EXPEDITED MOTION TO COMPEL DEFENDANT POURHASSAN TO COMPLY WITH HIS RULE 16 OBLIGATIONS**

The parties agreed on a schedule that provided defendant Nader Pourhassan nearly two months to prepare his expert disclosures. But when it was time for the defendant to make the required disclosures, he failed to comply with his obligations under Federal Rule of Criminal Procedure 16(b)(1)(C)(iii) with respect to all four of the experts that he noticed. The defendant's expert disclosures were critically deficient in two ways: (i) the defendant did not include a complete statement of all opinions that the defendant will elicit from each of his proposed experts at trial; and (ii) the defendant did not include the bases and reasons for each such opinion. The government made good faith efforts to give him the opportunity to supplement his expert disclosures. The defendant, however, did not provide any supplemental information for one of his four proposed experts and, with respect to the other three, he provided insufficient information.

The defendant's failure to comply with Rule 16 is prejudicing the government's ability to prepare for trial. For that reason, the government respectfully requests the Court order the defendant to provide supplemental expert disclosures that comply with Rule 16(b)(1)(C)(iii) **by 12:00 p.m. noon Eastern Time on April 10, 2024**, so that the government may consider this missing information in time to prepare any motions it plans to file with respect to the defendant's experts, which are due April 19, 2024. In light of the expedited nature of the relief sought here,

the government asks that the defendant's response to this motion be due by 12:00 p.m. noon Eastern Time on April 5, 2024.

**BACKGROUND**

The parties agreed on a pre-trial schedule, which provided the defendant around two months to prepare his expert disclosures. (ECF 94.) On March 15, 2024, when his expert disclosures were due, the defendant disclosed that he expected to call up to four experts to testify at trial, namely:

- Professor David J. Denis, who is expected to testify about economic analyses he conducted which purportedly show that: (i) the lies the defendant told victim-investors did not actually cause their losses; and (ii) the rationale underlying the defendant's insider stock sales is inconsistent with insider trading;

- Carl Seiden, who is expected to testify that, despite the fact that the defendant was CytoDyn's CEO, a hypothetical "reasonable investor" in CytoDyn stock would not have considered the defendant's lies to be important;

- Professor Jonathan R. Macey, who is expected to testify about the involvement and active participation of the numerous individuals in CytoDyn's public statement review process, including legal counsel; and

- Dr. Mark Robbins. who is expected to testify it was "reasonable and appropriate" for the defendant to rely on others – including co-defendant Kazem Kazempour – with respect to the allegations set forth in the indictment.

(*See* Government Exhibit ("GEX") 1).[1]

The defendant's expert disclosures, however, were cursory and deficient. (*Id.*) First, the defendant provided a list of general topics about which his proposed experts might testify, but did not provide the government requisite notice of the proposed expert's specific opinions on these topics. Second, the defendant systematically failed to disclose the "bases and reasons" for each of the proposed expert's specific opinions. In lieu of actual "bases and reasons" for each opinion, the

[1] The defendant attached the CV for each proposed expert to his expert disclosures. The government did not include those CVs in the version of the expert disclosures filed as GEX 1.

defendant pointed to each expert's purported qualifications and included a list of materials reviewed that was too vague and generalized to be helpful (*e.g.*, *id.* at 3 ("The case materials that Mr. Seiden considered that were produced by the Government."); *id.* at 5 ("Relevant publicly available data and information."); *id.* at 6 ("An analysis of a wide array of company disclosures, regulatory filings with the SEC, market and industry news and commentary by informed market participants."); *id.* at 8 ("Relevant publicly available documents and information that are being produced by Dr. Pourhassan with this disclosure.").

The government sent defense counsel correspondence detailing how the defendant failed to provide the information required by Federal Rule of Criminal Procedure 16(b)(1)(C)(iii) with respect to each of the noticed experts. (*See* GEX 2 (Seiden), GEX 3 (Denis), GEX 4 (Macey), and GEX 5 (Robbins)). The government explained that, because any motions the government intends to file with respect to the anticipated testimony of the defendant's experts are due April 19, 2024, the government was requesting that the defendant provide supplemental expert disclosures by March 25 (Seiden), March 26 (Denis and Macey), and March 27 (Robbins). The government further explained that if the defendant did not provide the missing information by those dates, then the government expected to file a motion to compel the defendant's disclosure of such information pursuant to Rule 16(d)(2).

As of the date of this failing, the defendant did not provide a supplemental expert disclosure for Professor Denis or otherwise respond the government's letter. The defendant had committed to respond by March 29, but did not do so. While the defendant did send letters purporting to respond the government's requests relating to Mr. Seiden (GEX 6), Prof. Macey (GEX 7), and Dr. Robbins (GEX 8), the defendant still had not satisfied his disclosure obligations. The government sent the defendant additional correspondence explaining how the defendant still failed to provide

the information required by Rule 16(b)(1)(C)(iii) with respect to Mr. Seiden (GEX 9) and Dr. Robbins (GEX 10), but, as of the date of this filing, had not received replies from the defendant.

## STANDARD

Federal Rule of Criminal Procedure 16(b)(1)(C)(i) provides that "the defendant must disclose to the government, in writing, the information required by (iii) for any testimony that the defendant intends to use under Federal Rule of Evidence 702, 703, or 705 during the defendant's case-in-chief at trial." "The disclosure for each expert witness must contain:

- a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief;
- the bases and reasons for them;
- the witness's qualifications, including a list of all publications authored in the previous 10 years; and
- a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition."

*Fed. R. Crim. P.* 16(b)(1)(C)(iii).

"Merely identifying the general topics about which the expert will testify is insufficient; rather, the summary must reveal the expert's actual opinions." *United States v. Kaufman*, No. 19-CR-504 (LAK), 2021 WL 4084523, at *19 (S.D.N.Y. Sept. 8, 2021), *aff'd*, No. 21-2589, 2023 WL 1871669 (2d Cir. Feb. 10, 2023) (quotations omitted) (citing *United States v. Duvall*, 272 F.3d 825, 828 (7th Cir.2001) ("The Rule requires a summary of the expected testimony, not a list of topics."). Disclosure of the "bases relied upon by the expert ... should cover not only written and oral reports, tests, reports, and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts." Fed. R. Crim. P. 16, Advisory Committee Note to 1993 Amendment. "Courts applying these principles

have noted that a 'general description of possible bases does not meet the requirements of Rule 16(b)(1)(C).'" *United States v. Weiner*, No. 22 CR. 19 (PGG), 2024 WL 82729, at *5 (S.D.N.Y. Jan. 8, 2024) (quoting *United States v. Sturman*, No. 96 CR. 318 (BSJ), 1998 WL 126066, at *1 (S.D.N.Y. Mar. 20, 1998)). "Disclosures must include more than a 'guess as to various opinions' included in the expert's submission." *Weiner*, WL 82729, at *5 (quoting *United States v. Ulbricht*, No. 14-CR-68 KBF, 2015 WL 413318, at *6 (S.D.N.Y. Feb. 1, 2015), *aff'd*, 858 F.3d 71 (2d Cir. 2017)).

The Advisory Committee notes to Rule 16 explain that the expert disclosure requirements are intended "to facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed," by providing "enforceable deadlines" for the disclosure of specific information about the content of each propose expert witness's testimony and potential impeachment. Fed. R. Crim. P. 16 Advisory Committee Notes to 2022 Amendment. Where a party has not complied with the disclosure requirements of Rule 16, "the court may: (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2). A "district court has broad discretion in fashioning a remedy for Rule 16 violations, which may include granting a continuance or ordering the exclusion of evidence." *Weiner*, WL 82729, at *6 (quotations and citations omitted).

# ARGUMENT

## I. THE COURT SHOULD ORDER THE DEFENDANT TO PROVIDE SUPPLEMENTAL EXPERT DISCLOSURES THAT COMPLY WITH HIS RULE 16 OBLIGATIONS

The defendant's expert disclosures are not straightforward. To the extent the defendant responded to the government's request for supplemental information, the defendant's responses are also not straightforward. Even a cursory review of the defendant's expert disclosures and letters lays bare that the defendant seeks to litigate by surprise – which is precisely what Rule 16(b)(1)(C)(iii) is intended to prevent. Below are examples of the types of major deficiencies with respect to each of the four expert disclosures. In order to be concise, the government has not attempted to catalog here all of the deficiencies for each. The bottom line is that the defendant should be ordered to supplement all of his expert disclosures so that they comply in all respects with the rule.

### A. Professor Denis

The defendant's expert disclosure for Prof. Denis states that he will testify about economic analyses he conducted which purportedly show that: (i) the lies the defendant told victim-investors did not actually cause their losses; and (ii) the rationale underlying the defendant's insider stock sales is inconsistent with insider trading. (GEX 1.) The defendant, however, did not disclose any information about Prof. Denis's analyses or what he found, let alone the bases and reasons for his findings. (GEX 3.) Counsel for the defendant committed to provide a response by March 29 (GEX 9 at 2), but did not do so.

### B. Mr. Seiden

The defendant's expert disclosure for Mr. Seiden states he will testify that, despite the fact that the defendant was CytoDyn's CEO, a hypothetical "reasonable investor" in CytoDyn stock

would not have considered the defendant's lies to be important. (GEX 1.) The government exchanged letters with counsel for the defendant, however, the defendant's expert disclosure for Mr. Seiden still fails to comply with Rule 16(b)(1)(C)(iii). (GEX 2, GEX 6.) As explained in a follow-up email that the government sent to the defendant, his expert disclosure for Mr. Seiden continues to be deficient because it still does not set forth the "bases and reasons" for each opinion that the defendant intends to elicit from Mr. Seiden. This category of disclosure is expressly required by Rule 16(b)(1)(C)(iii). Instead, it appears that the defendant is conflating "bases and reasons" with "qualifications". (GEX 9.) For example, in the defendant's letter purporting to provide supplemental information, the defendant wrote: "Mr. Seiden's bases and reasons relating to 'reasonable investors' in the biopharmaceutical space include his more than 30 years of working with institutional investors, and retail investors when called upon to do so." Such a statement sets forth "qualifications", but not "bases and reasons". (*Id.*)

Moreover, the government inquired about Mr. Seiden's experience advising retail investors. (GEX 2.) The government believed the information relevant because, among other things, Mr. Seiden is being asked to testify about the types of information a reasonable retail investor would consider and the places where a reasonable retail investor would find such information. In the defendant's letter, he wrote that, in his 30-plus years, Mr. Seiden worked with retail investors "when called upon to do so". (GEX 6.) When, however, the government asked the defendant to provide information explaining the circumstances under which Mr. Seiden was called upon to work with retail investors, what he did, and the frequency with which he did this type of work (GEX 9), the defendant did not respond.

### C. Professor Macey

The defendant is calling call Prof. Macey, who is a law professor, to testify, among other things, that the defendant "did not unilaterally publish company press releases or public statements." (GEX 1 at 4.) Rather, "the evidence indicates that various medical, clinical, pharmacological, legal, and other professionals were involved in the review, issuance, and/or approval of such documents and statements." (*Id.*)

In its letter, the government wrote that it appears that Prof. Macey will be merely summarizing evidence, and that the defendant has failed to disclose what expert opinions he will offer about the defendant's role with respect to the company's public statements. (GEX 4.) The government also wrote that the disclosure for Prof. Macey is also deficient because it does not provide the specific "bases and reasons" for each specific opinion that Mr. Macey will offer, as required by Rule 16(b)(1)(C)(iii). (*Id.*) Instead, the disclosure lists a general description of the materials reviewed and a summary of Mr. Macey's experience. (*Id.*)

The defendant's response is emblematic of the larger problem with his approach toward Rule 16:

> As noted in Dr. Pourhassan's Macey Response No. 2, Professor Macey's opinion will be focused on the public statements referenced in the Indictment and the Government's Rule 404(b) notices. Further, Professor Macey is expected to testify that such public statements were reviewed, edited, and approved by various individuals as discussed above. Professor Macey will opine that, in his extensive experience with corporate governance, it is typical for publicly traded corporations to have processes by which public statements are reviewed to ensure they are not misleading, and that based on his review of the documents produced by the Government, and in particular the exhibits listed in Dr. Pourhassan's March 15, 2024 Exhibit List, it appears that a public statement review process was in place at CytoDyn. The CytoDyn review process provided guardrails to ensure the accuracy of the statements before publication, and that review process ensured that several individuals reviewed, edited, and approved the public statements at issue before they were published.

(GEX 7.) Like his expert disclosure, the defendant's letter purportedly providing supplemental information fails to explain what role Prof. Macey will play other than to summarize evidence in the guise of an expert.

In addition, the defendant has confirmed he will not assert an advice of counsel defense at trial. It appears, however, that the defendant intends to use Prof. Macey as a vehicle to argue that the defendant relied on advice of counsel without actually assuming the burden of proving the affirmative defense or waiving privilege. In its letter, the government wrote: "The phrasing of parts of the expert disclosure for Mr. Macey could be read to suggest Mr. Macey will offer expert opinion testimony that Dr. Pourhassan received and/or relied on legal advice when making or causing certain public statements to be made. Please confirm Dr. Pourhassan will not elicit such testimony from Mr. Macey at trial." (GEX 4.) In response, the defendant wrote:

> Professor Macey will offer expert opinion testimony that based on his extensive experience regarding corporate governance, it is typical for legal counsel of public companies to be involved prior to the publication of company statements in light of the litigation risk and regulatory scrutiny associated with such statements. Dr. Pourhassan does not anticipate putting on a formal advice of counsel defense, but Professor Macey will opine for the jury on the involvement and active participation of the numerous individuals who comprised CytoDyn's public statement review process, inclusive of individuals who are in-house or outside attorneys.

(GEX 7.) Again, even after being asked a second time, the defendant fails to disclose what specific opinions he intends to elicit from Prof. Macey about the involvement of counsel in the public statements review process and the bases and reasons for those opinions.

**D. Dr. Robbins**

The defendant is calling Dr. Robbins to essentially testify that it was "reasonable and appropriate" for the defendant to rely on his co-defendant Kazem Kazempour and many others with respect to the actions and statements detailed in the indictment. (GEX 1.) In its letter, the government detailed a litany of deficiencies in the defendant's expert disclosure for Dr. Robbins.

(GEX 5.) While the defendant's letter provided additional information not previously disclosed (GEX 8), it still failed to provide the information that the defendant is required to disclose pursuant to Rule 16(b)(1)(C)(iii). In a follow-up email, the government explained that perhaps the biggest problem is the failure to articulate the "bases and reasons" for each opinion that Dr. Pourhassan intends to elicit from Dr. Robbins at trial. (GEX 10.) For example, the defendant's letter repeats that Dr. Robbins will opine that it was "reasonable and appropriate" for the defendant to rely on a number of different parties for a number of different reasons. (GEX 8.) The question remains: how and why is it "reasonable and appropriate" for the defendant to rely on them? In other words, what is the "reason" for Dr. Robbins' opinion? Another question that remains is: what are the facts or evidence on which Dr. Robbins will rely? In other words, what is the "bases" for Dr. Robbins' opinion? In the defendant's expert disclosure for Dr. Robbins and follow-up letter, in lieu of "bases and reasons" the defendant provides Dr. Robbins's "qualifications". While Rule 16(b)(1)(C)(iii) does indeed require disclosure of Dr. Robbins' "qualifications", that is separate and apart – and in addition to – "bases and reasons" for each expert opinion to be offered.

In addition, it appears the defendant intends to elicit Dr. Robbins's expert opinion as to what the defendant meant when the defendant wrote the April 14, 2020 email to co-defendant Kazem Kazempour directing Dr. Kazempour to file the HIV BLA even if it was incomplete. (Indictment ¶ 37.)[2] The expert disclosure states: "To the extent that Amarex wrongly perceived Dr. Pourhassan's April 14, 2020 email as one to submit the BLA incompletely on April 22, 2020

[2] As set forth in the indictment, the defendant wrote: "Today we have so far in 1 hour almost 20% drop in our stock price. Yesterday we had drop [sic] also after putting out great results about COVID-19 patients we are seeing these [sic] type of decline. This drop will be much deeper if we don' t file our BLA as the message board now is getting bombarded by investors who are very frustrated with me and CytoDyn. Please file the BLA no later than next week Wednesday, even if we are short in no matter what portion of whatever it is that we are short." (Indictment ¶ 37.)

(and indeed Amarex did not submit the BLA on April 22, 2020), it was the role and responsibility of Amarex as CytoDyn's CRO and regulatory agent to reject a filing date that could jeopardize CytoDyn's chances to receive FDA approval." (GEX 1.) However, when the government wrote to ask what specific opinions Dr. Robbins would offer, the defendant responded:

> The Government again misconstrues Dr. Robbins' opinion. Dr. Robbins does not intend to testify as to Dr. Pourhassan's intended meaning in the April 14, 2020 email. Rather, as stated in his Disclosure, Dr. Robbins will testify that based on his decades of experience described above and in his Disclosure, including his experience preparing FDA drug approval applications and working at a CRO, that it was the role and responsibility of Amarex as CytoDyn's CRO and regulatory agent to communicate with the sponsor and to reject a filing date that would result in a FDA refusal to file and could jeopardize the sponsor's chances to receive FDA approval.

(GEX 8.) When the government followed-up to confirm that Dr. Robbins will not offer any opinions about the defendant's April 14, 2020 email, the defendant did not reply. (GEX 10.)

* * *

There is no excuse for the defendant's failure to timely provide the information required under Rule 16, or to withhold it from the government when the government has repeatedly made good faith requests. The defendant agreed on the expert disclosure deadline, which the Court so ordered. The defendant had nearly two months to prepare his expert disclosures. And the defendant can easily disclose the requested information because it is known to him. Under these circumstances, the government respectfully submits that the Court should order the defendant to supplement **by April 10, 2024 at 12:00 p.m. noon Eastern Time** all of his expert disclosures with the information required by Rule 16(b)(1)(C)(iii), including a complete statement of all opinions that the defendant will elicit from each expert witness in the defendant's case-in-chief, and the bases and reasons for each and every such opinion.

## CONCLUSION

For the reasons set forth above, the Court should grant the government's expedited motion to compel.

Dated: April 1, 2024

Respectfully submitted,

EREK L. BARRON
United States Attorney

By: */s/ Aaron S.J. Zelinsky*
Aaron S.J. Zelinsky
Assistant United States Attorney

GLENN S. LEON
Chief, Fraud Section, Criminal Division

By: */s/ Christopher Fenton*
Lauren Archer
Christopher Fenton
Trial Attorneys