## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

NADER POURHASSAN and
KAZEM KAZEMPOUR,

Defendants.

CRIMINAL NO.  8:22-cr-00440-PX

## GOVERNMENT'S MOTION TO EXCLUDE DEFENDANTS' SUMMARY EXHIBITS

The government respectfully moves this Court to exclude the proposed summary exhibits noticed by Defendant Pourhassan to be introduced through his expert Professor Johnathan Macey (the "Macey Charts") and those noticed by Defendant Kazempour.  The Macey Charts each represent a selective summary of emails preceding various CytoDyn public statements in an effort to present a narrative that there was an internal process for reviewing those statements.  These are the exact types of charts the Court made clear, at the June 20, 2024 *Daubert* hearing, should not be introduced through Professor Macey as an expert and are directly counter to this Court's, subsequent, June 21, 2024 Order (ECF No. 165).  If Defendant Pourhassan intends to introduce the Macey Charts through Professor Macey as a summary witness, this Court should still exclude them because the underlying documents contain self-serving hearsay.  The Court should not permit Defendant Pourhassan's "back door" attempt to admit this, otherwise, inadmissible evidence.

Separately, this Court should also exclude Defendant Kazempour's summary charts.  These charts are a cumulative and unduly prejudicial repetition of the stock sales of CytoDyn insiders and others.  Moreover, based on this Court's prior rulings, these stock price charts must be

1

introduced through an expert witness.  Defendant Kazempour has not disclosed such an expert qualified to introduce them.  As a result, the Defendant Kazempour stock price charts, too, should be excluded.

**FACTUAL BACKGROUND**

Defendants Nader Pourhassan and Kazem Kazempour conspired to defraud investors of their respective companies by misrepresenting the status of their companies' development of a new drug: leronlimab.  In an effort to create the false impression that Defendant Pourhassan's company, CytoDyn, Inc., surpassed a significant regulatory milestone, the defendants submitted to the FDA a Biologics License Application ("BLA") for leronlimab that the defendants, both, knew was incomplete.  As a result of their actions, CytoDyn investors, who purchased CytoDyn's stock, based on the defendants' false representations, lost tens of millions of dollars, in the aggregate.  While those investors were losing money, Defendant Pourhassan took advantage of the defendants' knowingly false public statements.  He sold over $15 million worth of CytoCyn common stock before the market learned that the FDA had rejected CytoDyn's BLA as incomplete.  Defendant Kazempour also attempted to sell his shares on April 28, 2020, the day after CytoDyn falsely announced that it submitted a completed BLA to the FDA, but he was not able to exercise until several weeks later.

At trial, among other things, the government's evidence will show that the FDA repeatedly explained to the defendants what needed to be done to submit a completed BLA, including datasets and dose justification information.  The FDA also explained that the defendants' timelines for submission were overambitious and that an incomplete submission would lead to a Refusal to File.  Nonetheless, despite warnings from the FDA as well as CytoDyn and Amarex insiders, the defendants knowingly submitted the incomplete BLA, told the public it was a complete

2

submission, and profited from their material misrepresentations. On December 15, 2022, a federal grand jury indicted the defendants for these actions, as well as others. Subsequently, on August 22, 2024, the grand jury superseded that indictment. This trial begins on November 4, 2024.

<strong><u>ARGUMENT</u></strong>

**I.    The Court Should Exclude the Charts Defendant Pourhassan Intends to Admit Through Professor Macey.**

On October 10, 2024, defense counsel for Defendant Pourhassan provided a draft of certain "summary exhibits" that he intends to introduce at trial. Among the exhibits, included those that Defendant Pourhassan intends to introduce through Professor Jonathan Macey. Ex. A (PX-2120 through PX-2134). The Macey Charts appear to portray a timeline of email communications, several of which were sent by Defendant Pourhassan to various employees at CytoDyn. The final entry on each of these timelines identifies the publishing of a CytoDyn press release or a public SEC filing. The government moves to exclude the Macey Charts for two reasons: 1) if Defendant Pourhassan intends to introduce these charts through Professor Macey as an expert, the charts are in contradiction with the Court's June 21, 2024 Order (ECF No. 165) on the parties' *Daubert* motions; and 2) if Defendant Pourhassan intends to introduce the Macey Charts through Professor Macey as a summary witness, pursuant to Fed. R. of Evid. 1006, the underlying evidence contains inadmissible self-serving hearsay. Under either circumstance, the Macey Charts should be excluded.

With respect to Professor Macey's role as an expert, this Court should exclude the Macey Charts because they violate the Court's June 21, 2024 order. Following the government's *Daubert* motion to exclude Professor Macey (ECF No. 154 at 22), among other proposed experts, this Court ordered that Professor Macey "will not be permitted to recast, in narrative form, whether Dr. Pourhassan did or did not unilaterally publish company press releases or public statements, or

3

comment in narrative form about the internal workings of CytoDyn absent evidence in the record from which he may render reliable opinions." ECF No. 165 at 4 (the "Order") (omitting internal quotations). At the prior hearing on the *Daubert* motions, the Court explained the basis for this ruling. "[W]hat they seem to be saying is that there's a process for reviewing these statements, and these statements are reviewed by all these various people. . . . The problem that I have with the way it's framed is it appears to be just summarizing evidence that may or may not be in the record. . . . The Government's point is well taken that this is just a re-packaged narrative." ECF No. 166 (June 20, 2024 *Daubert* Hrg. Tr.) at 72:6 – 72:16. Later, government counsel attempted to confirm the Court's conclusion on this matter:

Counsel:    Just to be clear, our understanding is that he'll talk about what is common industry practice rather than acting as a summary witness for all of the various Bates labels that are put there?

Court:    Correct. Correct. And just to not be too pedantic about it but so that I'm clear, you know, that I would imagine the line of questioning would be, you know, "You understand that this has been testified to and that has been testified to and that has been testified to. Is this common industry practice?"

*Id.* at 74.

The proposed Macey Charts are exactly the type of evidence that the Court was attempting to ensure that Defendant Pourhassan did not introduce through Professor Macey as an expert. They selectively summarize multiple emails leading up to CytoDyn public statements to present the misleading narrative that there was a process for reviewing the public statements. These are the exact types of charts contemplated at the *Daubert* hearing. Now that the Macey Charts are before the Court, it should rule that these charts violate its Order and exclude them.

Separately, if Defendant Pourhassan attempts to admit these charts through Professor Macey as a summary witness, pursuant to Rule 1006, this Court should still exclude them because the underlying email communications include self-serving hearsay. "The contents of voluminous

writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." Fed. R. of Evid. 1006. "The purpose of this Rule is to reduce the volume of written documents that are introduced into evidence by allowing in evidence accurate derivatives from the voluminous documents." *United States v. Janati*, 374 F.3d 263, 272 (4th Cir. 2004) (citing *United States v. Bakker,* 925 F.2d 728, 736 (4th Cir.1991)). However, "[t]o comply with [Rule 1006] [] a chart summarizing evidence must be an accurate compilation of the voluminous records sought to be summarized" and "the records summarized must otherwise be admissible in evidence." *Id.*

It is well-established that a defendant may not introduce his own out-of-court statements for the truth of the matter asserted. Fed. R. Evid. 80l(d), 802; *see, e.g., United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) (holding that the defendant could not introduce his own out-of-court statements because the Rules of Evidence "do not . . . provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party"); *United States v. Marin*, 669 F.2d 73,84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."); *United States v. Palow*, 777 F.2d 52,56 (1st Cir. 1985) ("The requirement of Rule 801(d)(2)(A) that an admission be offered against a party is designed to exclude the introduction of self-serving statements by the party making them."). This is true even when the defendant claims that those statements would be exculpatory, which they are not in this case. *See Wilkerson*, 84 F.3d at 696.[1]

---

[1] Of course, a defendant's inculpatory statements, when offered by the government, are admissible party opponent admissions. *See* Fed. R. Evid. 801(d)(2). But this rule operates as a one-way street: a defendants' statements—whether as to themselves or others and whether exculpatory or not—are inadmissible hearsay, even if made contemporaneously with other self-inculpatory statements. *See Williamson v. United States*, 512 U.S. 594, 599 (1994) (finding "[t]he fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts"); *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (affirming district court decision to preclude defendant from "eliciting his own exculpatory statements, which were made within a broader, inculpatory narrative").

The rationale for such a rule is clear: to permit otherwise would place a defendant's self-serving statements "before the jury without subjecting [him] to cross-examination, precisely what the hearsay rule forbids." *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000). In the absence of such a rule, the parties could "effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to firsthand scrutiny by the jury." *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005).

Importantly, examples of defendants attempting to slip in favorable evidence through a "back door" abound. For example, defendants have sought to cross-examine the government's witnesses about self-serving, exculpatory portions of otherwise inculpatory statements. *See Ortega*, 203 F.3d at 682. Defendants have also attempted to invoke the "Rule of Completeness" codified in Fed. R. of Evid. 106 in order to "humanize" themselves or invite sympathy, *see, e.g.*, *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) (redacted confession not misleading, so Rule of Completeness did not require admission of the full statement into evidence), and "admit hearsay testimony through the 'back door' without subjecting themselves to cross-examination." *Ortega*, 203 F.3d at 683; *see also United States v. Williston*, 862 F.3d 1023, 1038 (10th Cir. 2017) (district court correctly excluded defendant's own inadmissible hearsay statements to cross-examine a witness, because "such a maneuver would amount to 'an end-run around the adversarial process'").

This is nothing more than a back door attempt to enter self-serving hearsay statements into evidence. The face of the Macey Charts identify the self-serving hearsay. For example, for the chart related to the March 18, 2019 Press Release published in GlobeNewswire (PX2121), it identifies several emails sent by Defendant Pourhassan and, at times, quotes him and others in an effort to show that others reviewed these press releases prior to them being publicly released. The

Court should prevent this attempt by Defendant Pourhassan to testify without swearing an oath or facing cross-examination and exclude the Macey Charts.

## II.    The Court Should Exclude Defendant Kazempour's Summary Exhibits.

Some of the exhibits, which have been attached to this motion as Exhibit B, are unduly prejudicial given their cumulative nature, pursuant to Fed R. Evid. 403, and others can only be introduced through expert testimony, which has not been disclosed.

Defendant Kazempour noticed 11 summary exhibits, numbered KX 488 through KX 498. KX 488 through 492 as well as 496 through 498 (collectively, "stock sales charts") concern the exercise of warrants and selling of shares by various Cytodyn company insiders as well as other people connected with the company, including Defendant Kazempour. *See* Exhibit B at 2-6, 10-12. KX 493 through 495 (collectively, "stock price charts") are graphs of the Cytodyn share price between April and June 2020, and KX 495 pairs the share price with events relevant to the charged scheme. *See* Exhibit B at 7-9.

The stock sales charts are unduly prejudicial because of their cumulative effect. A court may exclude evidence if its probative value is substantially outweighed by a danger of needlessly presenting cumulative evidence. Fed. R. Evid. 403; *see also United States v. Tillmon*, 954 F.3d 628, 643 (4th Cir. 2019) ("Rule 403 states that a district court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice or needlessly presenting cumulative evidence." (alterations and internal quotation marks omitted)); *United States v. Cartrette*, 502 Fed. Appx. 311 (4th Cir. 2012) (upholding exclusion of photographs and related Facebook pages as cumulative).

The eight stock sales charts all stand for a single proposition—other people exercised warrants and some sold shares too. That fact is already of questionable relevance; it certainly does

not require eight separate charts to convey.  The first two charts, KX 488 and 489 appear to be exact copies of each other, except one presents the exercise of warrants through vertical bars and the other through horizontal bars.  *Compare* Exhibit B at 2 and 3.  KX 490 presents the same information but this time summarized in a pie chart.  *See* Exhibit B at 4.  KX 491 one-ups its predecessor by using two pie charts, one chart for the earlier time-period and one for the later time period.   *See* Exhibit B at 5.  KX 492 again presents almost identical pie charts as the previous exhibit, but this time with different colors.  *See* Exhibit B at 6.   The  final three charts appear to make a change—instead of warrants exercised, the charts display the dollar value of the subsequent sales.  *See* Exhibit B at 10-12.  However, again, these all still stand for the same proposition—other people sold shares too.  Moreover, the last three charts repeat the sins of the first two, presenting incredibly similar information just with three different orientations of bars.

The stock sales charts are, on their face, cumulative.  This Court should exclude them, or at best, only allow the introduction of one of them.

The stock price charts should also be excluded because this Court has already ruled that that type of evidence could only be introduced through an expert, and Defendant Kazempour has not disclosed any expert who will be introducing them.

The government previously included Peter Melley, from FINRA's Criminal Prosecution Assistance Group, on its witness list, and it disclosed five topics that it sought to elicit from Mr. Melley, which it believed was all proper summary or lay opinion testimony.  *See* ECF No. 153-2 at 2.  Defendant Pourhassan moved to exclude four of the five topics as undisclosed expert testimony.  ECF No. 153.  In its response, the government outlined the type of testimony it would be eliciting from Mr. Melley, in support of its argument that the testimony was proper lay opinion and summary testimony.  *See* ECF No. 159.  Specifically, the government contended that

8

"summary testimony about regulatory filings, press releases, stock price and volume only require the process of reasoning familiar in everyday life and do not require specialized knowledge." *Id.* at 7. In support of that argument, the government pointed the Court to *United States v. Afriye*, in which a FINRA CPAG witness offered non-expert summary testimony about charts she had prepared, which were based on brokerage records, press releases, and publicly available data regarding the price and trading volume of the relevant securities. *See* ECF 159-1 (Transcript of Pretrial Conference in *United States v. Afriyie*, 16-cr-377, Dkt. 267-1 (S.D.N.Y. Jan. 12, 2017)). The court in *Afriye* permitted the testimony, finding it was appropriate for a FINRA witness to testify as to the rise in a stock price and the public announcement of a merger and "merely put those two points in time together and leave it to counsel to argue what is pretty obvious." *Id*. at 40. However, this Court found that argument to be unavailing and granted Defendant Pourhassan's motion to the extent that it argued that Mr. Melley's testimony was expert testimony and had to be properly disclosed pursuant to Fed. R. Crim. Pr. 16.

The stock price charts Defendant Kazempour seeks to introduce are exceedingly similar to the types of charts the government sought to introduce through Mr. Melley as summary testimony. Defendant Kazempour disclosed to the government that McGuire Woods Innovation Counsel A. Carter Arey would be introducing the exhibits as summary exhibits pursuant to either Fed. R. Evid. 1006 or Fed. R. Evid 611(a). However, based on this Court's prior rulings, the stock price charts are not proper summary exhibits and must be introduced through an expert. As Defendant Kazempour has not disclosed any expert who is qualified to introduce those exhibits, KX 493 through 495 should be excluded in their entirety consistent with the prior rulings in this case.

## **CONCLUSION**

For the foregoing reasons, the government respectfully submits that the Court should exclude the outlined summary exhibits.

Respectfully submitted,

EREK L. BARRON
United States Attorney

By:   */s/ Adeyemi Adenrele*
Adeyemi Adenrele
Assistant United States Attorney
United States Attorney's Office
District of Maryland
36 South Charles Street
Baltimore, Maryland 21201
Phone: (410) 209-4800
Email: Adeyemi.Adenrele@usdoj.gov

GLENN S. LEON
Chief, Fraud Section
Criminal Division

By:   */s/ Lauren Archer*
Lauren Archer
Matthew Reilly
Trial Attorneys

Vasanth Sridharan
Senior Litigation Counsel

1400 New York Avenue, NW
Washington, DC 20005
Phone: (202) 538-3859
Email: Lauren.Archer2@usdoj.gov

## CERTIFICATE OF SERVICE

On October 23, 2024, I filed the above motion on CM/ECF causing it to be served on all parties of record by electronic means.


By:    */s/ Adeyemi Adenrele*
       Adeyemi Adenrele
       Assistant United States Attorney